No. 83-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

MICHAEL JOSEPH STAFFORD,

        Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        W. D. Murray, Jr., argued, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Judy Browning argued, Asst. Atty. General, Helena
Robert M. McCarthy, County Attorney, Butte,
Montana

Submitted: January 10, 1984

Decided: March 5, 1984

Filed:

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant Michael Joseph Stafford was charged with violating section 61-7-103(1), M.C.A.--leaving the scene of an accident involving personal injuries. The case was tried before a jury in the District Court of the Second Judicial District, Silver Bow County. The jury returned a verdict of guilty, and defendant was sentenced by the trial court. We reverse.

While driving through an intersection of U.S. 10 and Ramsay Road in Silver Bow County, defendant broadsided another automobile, driven by Norwood Russell, which carried as passengers Russell's wife and son. Russell and his wife were both injured. Russell approached defendant's car to check his condition. Defendant told Russell that he was all right, but that he was leaving because the police would be coming. Defendant drove away, and Russell, who was in a weakened condition, passed out. A passing motorist saw defendant's car and recorded the license plate number before he left the scene.

A highway patrolman arrived shortly thereafter, and while inspecting the accident received a radio call that defendant was at a nearby residence. Defendant had driven to the home of a friend who called the Highway Patrol to report the incident. The patrolman went to the residence, where defendant admitted that he had been in an accident. The patrolman matched a grill found at the scene of the accident to the defendant's car. Defendant was thereupon arrested and charged with leaving the scene of an accident involving personal injuries. Defendant, who was intoxicated at the time of the crash, was also charged with driving under the

influence of alcohol. Defendant pleaded guilty to the D.U.I. charge.

Defense counsel was advised by the court that if the defendant pleaded guilty he would receive a fine of $500 and ten days in jail. Defendant rejected the bargain and pleaded not guilty to the crime of leaving the scene of an accident. His main defense was that the mental state of "knowledge" was a key element of the crime, and that he lacked that mental state at the time of the accident. Defendant maintained that he could not remember causing the accident or leaving the scene with knowledge that people had been harmed. The jury found him guilty.

After the trial, defendant's counsel procured an affidavit from one of the jurors (Crippen) stating that another juror (Warren Stillings) had told the jury during deliberations that, because defendant was drunk while driving, he should be convicted of the other charge on that basis alone. That juror also passed out a letter to the jury addressing a jury's duty to resist judicial instructions and acquit defendants in tax resistance cases. Counsel alleged that these incidents were prejudicial and he moved for a new trial. The court denied the motion, and later sentenced defendant to thirty days in the county jail and a fine of $1,000.00.

The following issues are raised on appeal:

1. Whether the verdict of the jury is invalid because the presentation and endorsement of written material advocating abuse of the jurors' role amounted to extraneous prejudicial influence.

2. Whether defendant is entitled to a new trial because one of the jurors was prejudiced against drunk drivers and against following judicial instruction and the evidence.

3

3. Whether the judge's conduct during the trial was improper and prejudicial to the defense.

4. Whether the jury was improperly and prejudicially instructed on the effect that an intoxicated condition may have on the requisite mental state.

5. Whether the jury was improperly and prejudicially instructed because the trial court failed to include "knowledge of injury" as an element of the offense.

6. Whether the trial court prejudicially failed to instruct the jury on physical impairment of the ability to form the requisite mental state.

7. Whether the jury was improperly and prejudicially instructed on the inference to be drawn from the failure to produce a witness.

8. Whether the trial court improperly imposed a higher sentence than one offered in plea-bargaining without specifically justifying the increased sentence.

The first three issues raise serious questions about the fundamental fairness afforded the defendant in his trial. Clearly essential to due process in a criminal prosecution, is a fair and impartial judge and a jury made up entirely of fair and impartial jurors.

Defendant first argues that Juror Stillings' encouragement to disregard the judge's instructions, and the document advocating abdication of the juror's proper function constitute extraneous prejudicial influence which render the verdict invalid.

In order to impeach this verdict with the statements of a juror, the allegations must amount to extraneous prejudicial influence upon the jury. Rule 606(b) M.R.Evid.

It appears this information crosses the "inherent in the jury process" boundary to the extent it promotes abdication

4

of the jury function in favor of policy implementation. However, there is no evidence, other than the very nature of the material and the statements, that this information had any prejudicial effect on the other jurors. We refuse to overturn the verdict on this ground because the defendant has failed to show prejudice by the extraneous information. State v. Maxwell (Mont. 1982), 647 P.2d 348, 352, 39 St.Rep. 1149, 1153; Erickson v. Perrett (1977), 175 Mont. 87, 91, 572 P.2d 518, 520.

Defendant next argues that juror Warren Stillings was partial and prejudiced against drinking and drinking drivers and that he concealed that fact during voir dire. Defendant argues the juror's prejudice is evident from his conduct and statements as reported in the affidavit of another juror.

The issue has been discussed by this Court before.

"If one of the jurors is incompetent because of actual bias entertained by him against the accused, and conceals such incompetency on his voir dire, this vitiates the jury as a whole. The accused being entitled to a jury of twelve impartial men, if he has but eleven, while the twelfth is hostile to him, he has not the impartial jury which the constitution and laws contemplate that he shall have." State v. Mott (1903), 29 Mont. 292, 297, 74 P. 228, 730.

Respondent does not argue that this is not the constitutional requirement. Instead, respondent argues that the affidavit of juror Crippen is incompetent to impeach the verdict under rule 606(b) M.R.Evid. This argument is a non sequitur. The rule simply does not come into play because the allegations are submitted for their relevance to matters prior to the jury's deliberations: the bias and prejudice of juror Stillings. See C. Mueller, "Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)," 57 Neb.L.Rev. 920, 956-57(1978). The inquiry here is not into the validity of the verdict; rather, the competency of

Warren Stillings to sit as a juror in the case, and defendant's constitutional right to twelve impartial jurors are at issue.

Respondent also argues that the allegations of misconduct are simply insufficient to support a finding of bias in fact. We find the following instances of speech and conduct by juror Stillings strongly tend to establish pre-deliberative bias:

1. The juror advocated a position of disregarding the law and instructions of the judge in favor of punishing the defendant for his drinking and drunk driving.

2. The juror passed written materials which advocate jurors usurp the power of the judge and legislature, and encourage people to "get on the jury" to effect this policy.

3. The juror did not deny the challenge that he must have perjured himself to sit on the jury.

We find these allegations to be sufficient to establish denial of a fair and impartial jury.

Defendant assigns as error the trial court's interruptions and volunteer objections. A trial judge must take care to insure that he does not abandon his role as impartial judge in favor of that of an advocate. People v. Adler (Colo. 1981), 629 P.2d 569, 573; State v. Brown (Ariz. 1979), 602 P.2d 478, 481.

We have reviewed the entire record, and indeed the trial court interrupted witnesses, and made objections for the county attorney.

We must grant the trial courts sufficient latitude that they can conduct trials in an orderly and expeditious fashion. In this case we believe the trial court became involved but not to such an extent as to deny fundamental fairness and due process of law.

Since this case must be retried, it is necessary to address issues regarding jury instructions on criminal mental state. Defendant contends instruction No. 10 fails to accurately state Montana law on the effect intoxication may have on mental state, and was so objected to at trial. We agree.

The instruction is taken from section 45-2-203, MCA:

"An intoxicated person is criminally responsible for his conduct unless his intoxicated condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

However, the instruction omits the following additional sentence found in the statute:

"An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense."

It is clear from the compiler's comments that the deleted sentence is not limited to cases of involuntary intoxication. The commentator states:

"Sentence two states the exception to the general rule to intoxication as a defense, by providing that where an offense requires a specific mental state, the intoxicated state of the offender may be considered as a factor in determining whether that required mental state has been established." Montana Code Annotated Annotations, 45-2-203, Title 45, Crimes, pg. 64.

Since defendant's only defense was to the element of knowledge, and was based on inability to form that mental state because of a combination of intoxication and head injury, failure to fully instruct the jury on this issue was prejudicial.

We also find a related error in the following jury instruction.

"To sustain the charge of LEAVING THE SCENE OF AN ACCIDENT INVOLVING PERSONAL INJURIES, the State must prove the following propositions:

7

"First: That the Defendant was knowingly the driver of a vehicle involved in the accident in question;

"Second: That the accident resulted in personal injuries to Don and Linda Russell;

"Third: That the Defendant knowingly failed to remain at the scene to give information and render aid to the injured."

This instruction sought to set forth the elements of the crime as defined by section 61-7-103, MCA, which provides as follows:

"Accidents involving death or personal injuries. (1) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible, but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of 61-7-105. Every such stop shall be made without obstructing traffic more than is necessary.

"(2) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not less than 30 days or more than 1 year or by a fine of not less than $100 or more than $5,000 or both such fine and imprisonment.

"(3) The division shall revoke the license or permit to drive of any resident and any nonresident operating privilege of any person so convicted for the period prescribed in 61-5-208."

The instruction quoted above sought to delineate the elements of the offense and divided those into three categories. The trial court then sought to require knowledge of two elements but not a third. This cannot be done.

Defendant argues that knowledge of personal injuries is required. Respondent takes the position that to hold that such knowledge is an element of the offense would, in the words of the trial court, "make a mockery out of the statute." The driver who leaves the scene of an accident may be foreclosing any opportunity to acquire such knowledge.

Although Respondent's argument makes good policy, Montana law leaves little room for interpretation.

8

Section 45-2-103, MCA provides in part:

"(1)   A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states [purposely, knowingly, negligently]. . . ..

"(2)   If the statute defining an offense prescribes a particular mental state with respect to the offense as a whole without distinguishing among the elements thereof, the prescribed mental state applies to each such element."   (emphasis added.)

Section 45-2-104 provides:

"Absolute liability.   A person may be guilty of an offense without having, as to each element thereof, one of the mental states [purposely, knowingly, or negligently] only if the offense is punishable by a fine not exceeding $500 and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

Section 61-7-103, MCA under which defendant was charged, is clearly not an offense of absolute liability.   An element of the offense is "an accident resulting in injury to or death of any person."   Thus Montana law clearly requires some mental state with respect to this element of the offense.

In State v. Parish (Idaho 1957), 310 P.2d 1082, the Idaho court interpreted an identical "hit and run" statute, and held that knowledge of the accident and knowledge of the resulting injury to another were essential elements of the offense.

"Knowledge on the part of the accused of the accident resulting in injury to another person does not require a showing by the state, by direct testimony, that the accused actually knew that the motor vehicle he was driving had struck some one. All of the facts and circumstances indicative of knowledge of such an accident may be considered by the jury in its determination of the fact of knowledge." Id. at 1084.

We agree with the rationale expressed by the Idaho court.   Knowledge of personal injury or death can simply be inferred from the seriousness of the accident.   Failure to

9

require a showing of knowledge with respect to each element was prejudicial error.

Defendant objects to the trial court's failure to instruct on traumatic amnesia. It is sufficient to instruct that defendant must have acted knowingly, and to define this mental state for the jury. We find no error on this issue.

Defendant assigns error to an instruction allowing an inference of unfavorable testimony to be drawn from the failure of either party to produce a material witness. Although we do not approve of an instruction that might confuse a jury about the defendant's burden in a criminal proceeding, we find no error given this final sentence of the instruction:

> "The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

The trial court involved itself in the plea bargaining process by representing to defendant's counsel that the best offer of sentencing was 10 days in jail and a fine of $500. After rejection of the plea bargain and trial, defendant was sentenced to 30 days and a fine of $1,000. The court clearly is not bound by the first offer.

Under the rule propounded by this Court in State v. Baldwin (Mont. 1981), 629 P.2d 222, 38 St.Rep. 882, and State v. Tate (1982), 196 Mont. 248, 639 P.2d 1149, a trial judge must "specifically point out the factors that justify the increased sentence." This rule will apply to the sentencing of defendant on retrial should defendant be convicted.

The case is remanded to the District Court for a new trial in accordance with this opinion.

Justice

10

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11